Cody Wofsy*
American Civil Liberties Union Foundation, Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org

Omar C. Jadwat*
American Civil Liberties Union Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
ojadwat@aclu.org

Alex Rate
Elizabeth Ehret
American Civil Liberties Union of Montana Foundation, Inc.
P.O. Box 9138
Missoula, MT 59807
Telephone: (406) 203-3375
ratea@aclumontana.org
ehrete@aclumontana.org

Danielle Coffman
Crowley Fleck, PLLP
1667 Whitefish Stage
Kalispell, MT  59901
Telephone:  (406)752-6644
dcoffman@crowleyfleck.com

*Pro Hac Vice Forthcoming

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| ANA SUDA and MARTHA HERNANDEZ,<br><br>        *Plaintiffs*,<br>  v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION; CBP COMMISSIONER KEVIN K. MCALEENAN, in his official capacity; CBP AGENT PAUL O'NEAL, in his individual and official capacities; and JOHN DOES 1-25, in their individual and official capacities.<br><br>        *Defendants*. | Civil Action No. __<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND REQUEST FOR JURY TRIAL** |

Plaintiffs Ana Suda and Martha Hernandez, through counsel, hereby complain and allege the following:

## Introduction

1. This case challenges U.S. Customs and Border Protection ("CBP") agents' unlawful detention of two United States citizens who chose to speak Spanish while shopping at a local convenience store.

2. America is a multi-lingual, multi-racial, and multi-ethnic country. Many United States citizens speak languages other than English. So do many non-citizens who have a right or permission to be in this country under our laws.

3. The United States has no official language. Many United States citizens, and many non-citizens who are in this country lawfully, are not fluent in English.

4. For millions of Americans, languages other than English are an important aspect of their identity and a vital link to their communities, cultures, and families.

5. Spanish is far and away the most common language in the United States after English. There are over 40 million U.S. citizens who speak Spanish at home, and tens of millions more who speak Spanish as a second language.

6. Like the rest of the country, Montana is increasingly diverse in terms of race, ethnicity, and language. According to U.S. Census Bureau statistics, 3.8

percent of the Montana population describe their race as Hispanic or Latino, or nearly 40,000 individuals.  3.9% of Montanans speak a language other than English at home.

7. Plaintiffs Ana Suda ("Ms. Suda") and Martha Hernandez ("Ms. Hernandez"), both U.S. citizens, are proud members of Montana's vibrant Latinx community.[1]

8. On May 16, 2018, CBP singled out, detained, and interrogated Ms. Suda and Ms. Hernandez.

9. CBP Agent Paul O'Neal, who detained them, told Ms. Suda and Ms. Hernandez that he did so because he heard them speaking Spanish.

10. He offered no other justification for their detention, and there was no reason to believe that either Ms. Suda or Ms. Hernandez had violated any law.

11. Because there was no legitimate reason to detain Ms. Suda and Ms. Hernandez, their seizure violated the Fourth Amendment.

12. The detention also violated Ms. Suda and Ms. Hernandez's constitutional right to equal protection.  Agent O'Neal singled them out based on race, relying on their use of Spanish as a justification and proxy for race.  Indeed, Agent O'Neal's supervisor confirmed that French-speakers would not be similarly detained.

---

[1] "Latinx" is a gender-neutral term sometimes used in lieu of Latino or Latina.

13. Plaintiffs bring this action to vindicate their constitutional rights and seek redress for the humiliating and discriminatory treatment they suffered at the hands of CBP and its agents.

## Jurisdiction and Venue

14. This case is brought pursuant to the Fourth and Fifth Amendments to the United States Constitution, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

15. Venue is proper in the District of Montana because a substantial part of the events complained of and giving rise to Plaintiffs' claims occurred in this District, the Plaintiffs reside in this district, and at least one Defendant resides in this district. *See* 28 U.S.C. §§ 1391(b), 1391(e).

## Parties

16. Plaintiff Ana Suda is a United States citizen currently living in Havre, Montana.

17. Plaintiff Martha Hernandez is a United States citizen currently living in Havre, Montana.

18. Defendant CBP is the sub-agency of the U.S. Department of Homeland Security ("DHS") that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border.

19. Defendant Kevin K. McAleenan is sued in his official capacity as the Acting Commissioner of CBP.

20. Defendant CBP Agent Paul O'Neal is sued in his official capacity as an Agent in the Havre office.

21. Plaintiffs are unaware of the true names and capacities, whether individual or otherwise, of Defendant Does 1 through 25, inclusive, and therefore sues those Defendants by fictitious names. Plaintiffs are informed and believe, and on that basis allege, that these Doe Defendants, and each of them, are in some manner responsible and liable for the acts and/or damages alleged in this Complaint, and that among these Doe Defendants are supervisory employees and federal agents who acted under color of law. Plaintiffs will amend this Complaint to allege the Doe Defendants' true names and capacities when they have been ascertained.

## Facts

22. Ms. Suda and Ms. Hernandez are residents of the small town of Havre, Montana. They have lived in Havre since 2014 and 2010, respectively.

23. Both were born in the United States, and, pursuant to the Fourteenth Amendment to the Constitution, they are both U.S. citizens by birth.

24. Ms. Suda was born in El Paso, Texas. Her father was a doctor in Mexico who first came to the United States as part of a student exchange program

at the University of Texas, El Paso.  Ms. Suda has three siblings, two of whom were born in the United States.  Ms. Suda grew up speaking Spanish.

25.Ms. Hernandez was born in El Centro, California.  Her father was a farmer and fieldworker in Presidio, Texas.  Ms. Hernandez grew up with Spanish as the first and primary language spoken in her household.

26.For both Ms. Suda and Ms. Hernandez, speaking Spanish keeps them connected to their families, communities, and culture.  It is an important part of their identities as Latinx-Americans.

27.Ms. Suda is fluent in Spanish.  She wants to ensure that her children are able to speak Spanish with their grandparents.  She does not want to lose her culture, including speaking Spanish.

28.Ms. Hernandez is fluent in Spanish.  The Spanish language connects her to her roots.  She believes that the ability to speak multiple languages creates more opportunities for her children.  She is proud of her Latinx heritage and her identity is deeply connected to the Spanish language.

29.Ms. Suda moved to Montana in 2014.  Her husband is from Montana and they decided to move their family to Havre for personal and professional reasons.

30. Ms. Hernandez moved to Montana in 2010. She visited the State to attend a friend's wedding. She fell in love with Montana and decided to make her home in Havre.

31. Ms. Suda and Ms. Hernandez are raising their families in Havre. Ms. Suda has two children, ages 6 and 8, and Ms. Hernandez has three, ages 18, 16, and 2. All are U.S. citizens.

32. Ms. Suda and Ms. Hernandez are heavily involved with Havre's growing Latinx community. They assist with various multi-cultural events hosted by Montana State University-Northern. For example, in October 2018 they celebrated National Hispanic Awareness Month by teaching Latin dance classes at the University.

33. Ms. Hernandez and Ms. Suda are certified nurse assistants at the Northern Montana Care Center. They work 40-50 hours a week to support their families.

34. May 16, 2018, began for Ms. Suda and Ms. Hernandez like most others. Ms. Suda and Ms. Hernandez went to their local gym at night, after their children were in bed.

35. On their way home, Ms. Suda and Ms. Hernandez stopped at the Town Pump convenience store in Havre to buy milk and eggs. They frequently shopped at the Town Pump after exercising at the gym.

36. As the two shopped, they spoke with one another in Spanish. Their tone was normal and casual, two friends having a typical conversation.

37. Unbeknownst to Ms. Suda and Ms. Hernandez, while they were shopping a CBP agent, Defendant O'Neal, entered the convenience store. Agent O'Neal overheard Ms. Suda and Ms. Hernandez speaking Spanish in the store.

38. Ms. Suda and Ms. Hernandez picked out their items and got in line, waiting for the cashier.

39. Agent O'Neal got in line behind Ms. Suda and Ms. Hernandez.

40. Ms. Hernandez said hello to Agent O'Neal in English, and asked how he was doing. Her tone was casual, relaxed, and friendly.

41. Havre is a small town, with a population of less than 10,000. Ms. Suda and Ms. Hernandez know many of the town's residents by name or by sight.

42. Because the town is so small, Agent O'Neal's unfamiliar face was notable. It is common in Havre to greet strangers.

43. Agent O'Neal responded by commenting on Ms. Hernandez's accent, calling it very strong. He then asked the two where they were born.

44. Ms. Suda was shocked by the question, and asked, "are you serious?" Agent O'Neal responded that he was "dead serious."

45. Ms. Suda and Ms. Hernandez informed Agent O'Neal that they were born in El Paso, Texas, and El Centro, California, respectively.

46. Agent O'Neal had no legitimate basis to disbelieve this statement, nor any legitimate reason to suspect an immigration violation or any criminal activity on the part of either woman. Nevertheless, he detained and seized Ms. Suda and Ms. Hernandez.

47. Agent O'Neal demanded that the two provide him with identification and refused to let them pay for their groceries until they gave him their identification. Ms. Suda and Ms. Hernandez each dutifully provided Agent O'Neal with a valid Montana driver's license.

48. After Ms. Suda and Ms. Hernandez gave Agent O'Neal their driver's licenses, the three left the convenience store and stood next to Agent O'Neal's CBP vehicle.

49. Ms. Suda and Ms. Hernandez began filming the incident, and asked Agent O'Neal, "so can you tell us in the video please why you ask us for our ID's please?"

50. Agent O'Neal responded: "Ma'am the reason I asked you for your ID is because I came in here and saw that you guys are speaking Spanish which is very unheard of up here."

51. Agent O'Neal went on: "It has to do with you guys speaking Spanish in the store in a state where it's predominately English speaking."

52. Ms. Suda asked, "so it is illegal to speak Spanish in Montana?" Agent O'Neal responded, "Well ma'am it's not illegal it's just very unheard of up here."

53. Shortly thereafter, another CBP agent arrived.

54. Ms. Suda stated, "I am a U.S. Citizen and I have my rights. I was born in the United States of America. So please, give me my paper back."

55. Agent O'Neal responded, "I understand."

56. Agent O'Neal made clear, by demanding their driver's licenses and through his words and actions throughout the interaction, that Ms. Suda and Ms. Hernandez were not free to leave.

57. Ms. Suda and Ms. Hernandez did not feel free to leave during the interaction, and that was or should have been clear to Agent O'Neal based on their words and actions.

58. Agent O'Neal, and all other CBP agents Ms. Suda and Ms. Hernandez saw that day, were in uniform, wearing badges, and carrying firearms and other weapons. Their vehicles were marked as CBP vehicles.

59. While Ms. Suda and Ms. Hernandez were detained, Agent O'Neal instructed them to move to the front of his vehicle and remove their hands from their pockets.

60. Eventually, Agent O'Neal's supervisor arrived. Agent O'Neal's supervisor similarly refused to release Ms. Suda and Ms. Hernandez.

61. Ms. Suda asked the supervisor whether they would be similarly detained if they had been speaking French. The supervisor said "no, we don't do that."

62. Ms. Suda and Ms. Hernandez were detained by CBP for approximately forty minutes.

63. During most of this time, they were detained outside the Town Pump, in clear view of Highway 2. Cars passed during the detention, including a Havre police car that slowly drove by.

64. Finally, Agent O'Neal returned the driver's licenses and informed Ms. Suda and Ms. Hernandez that they were free to leave.

65. There was no legitimate reason for Agent O'Neal and other CBP agents to detain Ms. Suda and Ms. Hernandez. Speaking Spanish does not establish reasonable suspicion justifying a stop and detention, much less probable cause for an arrest.

66. There is a strong and vibrant Latinx community in Havre, of which Ms. Suda and Ms. Hernandez are proud members.

67. Ms. Suda and Ms. Hernandez hear people speak Spanish in Havre every day. One of their colleagues at Northern Montana Care Center speaks

Spanish with both Ms. Suda and Ms. Hernandez.  There is a new Spanish-language music radio show broadcast on 90.1 FM that caters to the substantial and growing Latinx population in Havre and neighboring towns.

68. Ms. Suda and Ms. Hernandez have suffered emotional and psychological harm as a result of this detention.

69. The experience was humiliating, made them feel like they had done something wrong, and put them on display to their neighbors.  Since the seizure, Ms. Suda, Ms. Hernandez, and their families have been shunned and excluded by other members of the Havre community.

70. Ms. Hernandez and Ms. Suda no longer feel comfortable speaking Spanish in public, and fear that if they do so or otherwise express their Latinx identity they will be stopped and questioned by CBP agents.

71. This unjustified and discriminatory seizure is part of a longstanding pattern of abusive seizures and investigations by local CBP agents.

72. CBP maintains a regional office in Havre, designated the "Havre Sector."  The Havre Sector includes 456 miles of international border, starting along the Montana-North Dakota border to the east and ending at the Continental Divide to the west.  The sector consists of six stations: Plentywood, Scobey, Havre, Malta, St. Mary, and Sweetgrass.

73. In a series of events, Havre Sector agents have targeted Latinx individuals without justification, often based on their race.

74. For example, CBP agents detained five Latinx men in Havre in 2004. The Ninth Circuit held that this seizure violated the Fourth Amendment, and that neither "apparent Hispanic ethnicity" nor inability to speak English justified the seizure. *United States v. Manzo-Jurado*, 457 F.3d 928 (9th Cir. 2006).[2]

75. More recently, in April 2016, CBP agents from the Havre Field Office detained and interrogated Miriam Rojas-Rosas and Julio Ladislao Santiago-Ortiz for over 24 hours even though they both possessed valid immigration documents to prove their lawful status. Ms. Rojas-Rosas was four months pregnant at the time. *See* Cause No. 4:18-cv-00062-BMM (D. Mont.).

76. Ms. Suda and Ms. Hernandez were personally singled out by Havre Sector agents based on their race in February, 2018—approximately three months before their detention.

77. They were out dancing at a bar when a CBP agent, also at the bar and in plain clothes, took photos of them and sent the photos to other agents with the message: "There are two Mexicans at the bar."

---

[2] This Complaint uses "race" and "ethnicity" interchangeably in relation to Latinx individuals. *See Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 863 (2017)

78. On information and belief, the agent would have detained Ms. Suda and Ms. Hernandez or arranged for other agents to do so, but one of the agents receiving the text message indicated Ms. Suda and Ms. Hernandez were friends with his wife.

79. The agent who sent the original text did not speak to Ms. Suda and Ms. Hernandez, and had no reason to single them out apart from their race.

80. Likewise, Agent O'Neal has previously singled out Havre residents based on their race. For example, at a social gathering Agent O'Neal interrogated another individual about her Mexican heritage. That individual felt that she was being interrogated about her immigration status.

## Causes of Action

### COUNT I – Fourth Amendment

81. The foregoing allegations are re-alleged and incorporated herein by reference.

82. The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures."

83. Ms. Suda and Ms. Hernandez's seizure and detention violated the Fourth Amendment to the United States Constitution because there was no reasonable suspicion or probable cause justifying the seizure and detention.

84. Havre Sector agents have consistently engaged in seizures without sufficient justification.

85. There is a very significant possibility Ms. Suda and Ms. Hernandez will again be seized by Havre Sector agents without sufficient justification based on their race, accent, and/or speaking Spanish.

86. This Count is against all Defendants.

## COUNT II – Equal Protection

87. The foregoing allegations are re-alleged and incorporated herein by reference.

88. The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."  It contains an equal protection component.

89. Defendants seized Ms. Suda and Ms. Hernandez based on their race, in violation of the equal protection component of the Fifth Amendment.

90. Havre Sector agents have consistently singled out and targeted individuals in Havre based on their race.

91. There is a very significant possibility Ms. Suda and Ms. Hernandez will again be singled out and targeted by Havre Sector agents based on their race.

92. This Count is against all Defendants.

## COUNT III – Declaratory Relief (28 U.S.C. § 2201)

93. The foregoing allegations are re-alleged and incorporated herein by reference.

94. A ripe and justiciable controversy exists with regard to the circumstances and legality of Plaintiffs' detention.

95. As a result, Plaintiffs are entitled to a declaration in their favor pursuant to 28 U.S.C. § 2201 that race, accent and language cannot create suspicion sufficient to justify seizure and/or detention, except where the seizure is based on a specific and reliable suspect description matching such characteristics.

96. This Count is against all Defendants.

## Jury Demand

97. Plaintiffs demand a trial by jury in this action on each of their claims triable by jury.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Preliminarily and permanently enjoin Defendants from stopping and/or detaining individuals on the basis of race, accent, and/or speaking Spanish, except where the seizure is based on a specific and reliable suspect description matching such characteristics.

2. Declare that race, accent, and language cannot create suspicion sufficient to justify seizure and/or detention, except where the seizure is based on a specific and reliable suspect description matching such characteristics.

3. Compensatory damages in an amount to be proven at trial.

4. Punitive damages in an amount to be proven at trial.

5. Costs and reasonable attorney fees.

6. Such other relief as the Court deems just and equitable.

Respectfully submitted this 14th day of February, 2019

/s/ *Alex Rate*

Alex Rate
AMERICAN CIVIL LIBERTIES
UNION OF MONTANA
FOUNDATION, Inc.
P.O. Box 9138
Missoula, MT 59807

*Counsel for plaintiffs*