**VICTORIA L. FRANCIS**
Assistant U.S. Attorney
2601 2nd Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 247-6101
FAX: (406) 657-6058
Email: victoria.francis@usdoj.gov

**CHAD C. SPRAKER**
Assistant U.S. Attorney
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5120
FAX: (406) 457-5130
Email: chad.spraker@usdoj.gov

**ATTORNEYS FOR DEFENDANTS**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| **ANA SUDA and MARTHA HERNANDEZ,**<br><br>               **Plaintiffs,**<br><br>  vs.<br><br>**UNITED STATES CUSTOMS AND BORDER PROTECTION; CBP COMMISSIONER KEVIN K. MCALEENAN, in his official capacity; and CBP AGENT PAUL O'NEILL, in his official and individual capacity,**<br><br>               **Defendants.** | **CV 19-10-GF-BMM**<br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

1

Plaintiffs Ana Suda and Martha Hernandez allege they were unlawfully detained on May 16, 2018, by United States Customs and Border Protection (CBP) agents based upon Suda and Hernandez's race and ethnicity. They do not allege they have been subject to an unlawful detention on any other occasion. Their complaint alleges violations of the Fourth and Fifth Amendments and requests damages, injunctive relief, and declaratory relief against CBP, CBP Commissioner Kevin K. McAleenan in his official capacity, and "CBP Agent Paul O'Neal" in his individual and official capacities.[1]

Suda and Hernandez's claims for damages against CBP and its employees in their official capacities must be dismissed for lack of subject matter jurisdiction, as the United States has not waived its sovereign immunity to damages claims arising under the U.S. Constitution. Suda and Hernandez also fail to plausibly allege they are entitled to prospective injunctive relief against CBP because a single past detention does not show a "real or immediate threat that the plaintiffs will be wronged again—a likelihood of substantial and immediate irreparable injury." *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (en banc)

---

[1] Agent Paul O'Neill's name is misspelled through the complaint. Agent O'Neill, in his individual capacity, is not represented by the U.S. Attorney's Office for the District of Montana at this time and is not a party to the present motion.

(internal quotation marks and brackets omitted). Moreover, because any future injury to Suda and Hernadez by CBP is speculative, their request for declaratory relief is unripe. Because the Court lacks subject matter jurisdiction and equitable power to provide the Plaintiffs' requested relief, the complaint should be dismissed as to CBP and its employees in their official capacities.

## FACTUAL ALLEGATIONS[2]

Plaintiffs Ana Suda and Martha Hernandez are residents of Havre, Montana. (Complaint, Doc. 1 ¶ 22.) Suda has lived in Havre since 2014, while Hernandez has lived there since 2010. *Id.* Both are United States citizens and identify as "Latinx-Americans," which they use as a gender-neutral term for Latino or Latina. *Id.* ¶ 7 n.1; ¶ 23. Both Suda and Hernandez grew up speaking Spanish and continue to do so. *Id.* ¶¶ 26-28.

The evening of May 16, 2018, Suda and Hernandez visited a local gym in Havre. *Id.* ¶ 34. On their way home, they stopped at a convenience store to buy groceries. *Id.* ¶ 35. They spoke to each other in Spanish while in the store. *Id.* ¶ 36. While Suda and Hernandez were shopping, Border Patrol Agent Paul O'Neill entered the store and overhead them speaking Spanish. *Id.* ¶ 37.

---

[2] For purposes of the present motion to dismiss only, Defendants assume without admitting that the well-pleaded allegations in Plaintiffs' complaint are true. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 961 n.1 (9th Cir. 2018).

3

Suda and Hernandez selected their items and got in line to pay.  *Id.* ¶ 38.  Agent O'Neill got in line behind them.  *Id.* ¶ 39.  Hernandez greeted O'Neill in English to which O'Neill replied by commenting on Hernandez's accent and asking Suda and Hernandez where they were born.  *Id.* ¶ 43.  Suda and Hernandez responded that they were born in El Paso, Texas and El Centro, California, respectively.  *Id.* ¶ 45.

According to the complaint, O'Neill allegedly detained Suda and Hernandez and demanded they provide identification.  *Id.* ¶¶ 46-47.  Suda and Hernandez provided O'Neill with their driver's licenses, and the three exited the convenience store and stood next to O'Neill's government vehicle.  *Id.* ¶ 48.  Suda and Hernandez began filming the encounter and asked O'Neill why he asked them for their identification.  *Id.* ¶ 49.  O'Neill responded that he did so because Suda and Hernandez were speaking Spanish, which O'Neill stated was uncommon in that area.  *Id.* ¶¶ 50-51.  At some point, O'Neill's supervisor also arrived and allegedly refused to release Suda and Hernandez.  *Id.* ¶ 60.  According to the complaint, after approximately forty minutes, O'Neill returned Suda and Hernandez's driver's licenses and informed them they were free to leave.  *Id.* ¶ 64.

Suda and Hernadez's complaint names as Defendants CBP, CBP Commissioner Kevin K. McAleenan in his official capacity, and CBP Agent Paul

4

O'Neill in his individual and official capacities.[3]  *Id.* at 1; *id.* ¶¶ 18-20.  The complaint sets forth three counts against each of the Defendants: a violation of the Fourth Amendment of the U.S. Constitution (Count I); a violation of the Equal Protection Clause of the Fifth Amendment of the U.S. Constitution (Count II); and a demand for declaratory relief (Count III).  *Id.* ¶¶ 81-96.

Suda and Hernandez's prayer for relief requests the Court "[p]reliminarily and permanently enjoin Defendants from stopping and/or detaining individuals on the basis of race, accent, and/or speaking Spanish, except where the seizure is based on a specific and reliable suspect description matching such characteristics." *Id.* at 16.  They also request the Court to "[d]eclare that race, accent, and language cannot create suspicion sufficient to justify seizure and/or detention, except where the seizure is based on a specific and reliable suspect description matching such characteristics."  *Id.* at 17.  Suda and Hernandez further request unspecified compensatory and punitive damages.  *Id.*

---

[3] An action against an officer acting in his or her official capacity as a federal agent operates as a claim against the United States.  *See Solida v. McKelvey*, 820 F.3d 1090, 1095 (9th Cir. 2016); *see also Ogden v. Draper*, 13-179-M-DLC, 2014 WL 12788193, at *5 (D. Mont. Mar. 21, 2014) ("[E]mployees sued for damages in their official capacity assume the identity of the government that employs them.") (internal quotation marks and ellipsis omitted).

## LEGAL STANDARD

To survive a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a plaintiff has the burden of establishing federal subject matter jurisdiction. *Tosco Corp. v. Cmtys. for a Better Envtl.,* 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). Courts presume lack of subject matter jurisdiction unless a plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377-378 (1994); *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013). In deciding a facial attack on subject matter jurisdiction, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). The court does not, however, accept the truth of legal conclusions cast in the form of factual allegations. *Id.*

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal under Rule 12(b)(6) is proper when the complaint either lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

## ARGUMENT

I. **The Court lacks subject matter jurisdiction over Plaintiffs' claims for damages against United States Customs and Border Protection and its employees named in their official capacity.**

This Court lacks subject matter jurisdiction as to Plaintiffs' claims for damages against the United States because the United States has not waived its sovereign immunity to claims for damages arising under the U.S. Constitution. It is axiomatic that the United States cannot be sued without its consent. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Absent a waiver, sovereign immunity shields the United States and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

The United States, its agencies, and its employees in their official capacities are immune from suit on constitutional claims for damages. *Pereira v. U.S. Postal Serv.*, 964 F.2d 873, 876 (9th Cir. 1992) ("[F]ederal district courts have no jurisdiction over the United States where claims allege constitutional torts."). Indeed, the Supreme Court has expressly declined to create *Bivens*-like causes of action against federal agencies. *See Meyer*, 510 U.S. at 486 ("[A] damages remedy against federal agencies would be inappropriate even if such a remedy were consistent with *Bivens*."). Punitive damages are also prohibited absent a

waiver of sovereign immunity. *Matter of Sparkman*, 703 F.2d 1097, 1101 (9th Cir. 1983). ("A federal instrumentality . . . retains its immunity from punitive damages unless Congress *explicitly* authorizes liability for such damages.").

Plaintiffs' prayer for relief requests this Court to award them compensatory and punitive damages for their claims under the Fourth and Fifth Amendments. (Compl., Doc. 1 at 17.) The United States, however, is entitled to sovereign immunity for any damage claim, compensatory or punitive, arising under the U.S. Constitution. Therefore, Plaintiffs' claims for damages against CBP and its employees in their official capacities must be dismissed with prejudice.

## II. Plaintiffs lack standing to sue CBP and its employees named in their official capacities for prospective injunctive relief.

A plaintiff must demonstrate standing separately for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). There are two components to a standing inquiry when a plaintiff requests prospective equitable relief. *Stevens v. Harper*, 213 F.R.D. 358, 366 (E.D. Cal. 2002). First, a plaintiff must satisfy the constitutional requirements for standing by fulfilling the "case or controversy" requirement of Article III. *Hodgers-Durgin*, 199 F.3d at 1041. Second, to demonstrate an entitlement to injunctive relief, plaintiff must show a "real or immediate threat that the plaintiffs will be wronged again—a likelihood of substantial and immediate irreparable injury." *See id.* at 1042 (9th Cir. 1999) (en banc) (internal quotation marks and

brackets omitted).  Here, Plaintiffs fail to state a plausible claim that they are entitled to relief under the second prong of the standing inquiry for prospective equitable relief.[4]

In a closely analogous case, *Hodgers-Durgin v. de la Vina*, two plaintiffs brought an action against the United States Border Patrol for a declaratory judgment that its roving patrols violated the Fourth Amendment as well as an injunction against future unconstitutional practices.  *Id.* at 1039.  The first plaintiff was a United States citizen who described himself as a having a Hispanic appearance.  *Id.*  He lived in Tucson, Arizona and traveled approximately 400 to 500 miles a week on an interstate highway between Tucson and Nogales.  *Id.*  The plaintiff saw Border Patrol agents every time he drove on the interstate but had only been stopped once in a ten-year period.  *Id.*  On that occasion, a Border Patrol agent stopped him and asked where he had come from and where he was going.  *Id.*  The plaintiff also consented to a search of his trunk.  *Id.*  When the agent found nothing, the plaintiff was permitted to continue on his way.  *Id.*

The second plaintiff was also a United States citizen who was born in Mexico but had an English ancestry along with ash blond hair, light skin, and light

---

[4] Defendants reserve their right to contest the first prong of the standing inquiry, Article III standing, in future filings with the Court.

brown eyes. *Id.* The plaintiff drove approximately 15 miles a day four or five times a week on the same interstate from Rio Rico to Nogales. *Id.* According to the plaintiff, whenever she traveled on the interstate she frequently saw Border Patrol agents but had been stopped by Border Patrol only once in approximately ten years. *Id.* In that instance, she was stopped by a Border Patrol agent, who asked whether she was a United States citizen. *Id.* The agent also asked what she had in her car and requested she open the hatchback. *Id.* at 1040. The plaintiff complied, but the agent found nothing and drove away. *Id.*

The Ninth Circuit first considered but did not decide whether the plaintiffs had standing under Article III of the U.S. Constitution. *Id.* at 1041. Accordingly, the court assumed that the plaintiffs had asserted a sufficient likelihood of future injury sufficient to satisfy the "case or controversy" requirement of Article III standing to seek equitable relief. *Id.* at 1042.

Nevertheless, the court concluded that the plaintiffs were not entitled to equitable relief because "the equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiffs will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'"[5] *Id.* at 1042

---

[5] The court explained its ruling as a non-merits decision "based on the scope of our

(*quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)) (internal brackets omitted). The Court reasoned that each of the plaintiffs frequently encountered Border Patrol agents but were stopped only once in ten years. *Id.* at 1044. Thus, it was not sufficiently likely that the plaintiffs would again be stopped by the Border Patrol. *Id.* "In the absence of a likelihood of injury to the named plaintiffs," the court explained, "there is no basis for granting injunctive relief that would restructure the operations of the Border Patrol and that would require ongoing judicial supervision of an agency normally, and properly, overseen by the executive branch." *Id.* The Court further concluded that the plaintiffs' failure to establish a likelihood of future injury also rendered their claim for declaratory relief unripe. *Id.*

In this case, Plaintiffs similarly fail to meet their burden to establish standing to demand prospective equitable relief against CBP and its employees sued in their official capacities. In their complaint's prayer for relief, Plaintiffs ask this Court to "[p]reliminarily and permanently enjoin Defendants from stopping and/or detaining individuals on the basis of race, accent, and/or speaking Spanish, except where the seizure is based on a specific and reliable suspect description matching such characteristics." (Doc. 1 at 16.) Like the plaintiffs in *Hodgers-Durgin*,

---

equitable power to grant injunctive relief." *Id.* at 1042 n.3.

however, the only alleged seizure they experienced is a single incident. According to the complaint, Suda has lived in Havre since 2014, while Hernandez has lived there since 2010, yet they do not allege any other stop by Border Patrol before May 2018. *Id.* ¶ 22.

Plaintiffs' complaint also lists a number of allegations, which they claim represents instances where "Havre Sector agents have targeted Latinx individuals without justification, often based on their race." *Id.* ¶ 73. In particular, they cite to *United States v. Manzo-Jurado*, 457 F.3d 928 (9th Cir. 2006), an opinion from the United States Court of Appeals for the Ninth Circuit describing a 2004 CBP detention of five men of "apparent Hispanic ethnicity" in Havre. *Id.* ¶ 74. They also cite to *Rojas-Rosas v. United States*, CV 18-62-GF-BMM-JTJ (D. Mont.), which they claim represents an incident where "CBP agents from the Havre Field Office detained and interrogated [two plaintiffs] for over 24 hours even though they both possessed valid immigration documents to prove their lawful status." *Id.* ¶ 75. The complaint also describes an incident in February 2018 in which a "CBP agent" in plain clothes allegedly took photos of Suda and Hernandez dancing at a bar and sent the photos to another agent, texting that "[t]here are two Mexicans at the bar." *Id.* ¶ 77. Finally, Plaintiffs allege that at a social gathering

"O'Neal [sic] interrogated another individual about her Mexican heritage." *Id.* ¶ 80.

As a preliminary matter, Plaintiffs cannot allege injuries incurred by other individuals to establish their standing to request prospective relief in the present case. For instance, in *Hodgers-Durgin*, the plaintiffs argued that they should be able to seek an injunction based upon the likelihood of future injury to unnamed class action members. *Hodgers-Durgin*, 199 F.3d at 1044. The Ninth Circuit noted that several unnamed members of a purported class action had in fact suffered more frequent injuries than the named plaintiffs. *Id.* at 1044-45. One individual was stopped three times, another individual was stopped at least four times, and another was stopped on more occasions than he could recall. *Id.* at 1045. The court stated, "Were those individuals named plaintiffs, they might well be able to demonstrate the likelihood of injury required to pursue equitable relief of the sort sought by [a named plaintiff]." *Id.* Nevertheless, the Ninth Circuit concluded that any injury to an unnamed member of a proposed class was irrelevant to the question whether the named plaintiffs were entitled to their requested injunctive relief. *Id.* at 1045.

Similarly here, Plaintiffs' allegations regarding injuries sustained by third parties are not relevant to whether they have standing to obtain injunctive relief.

As such, Plaintiffs' citation to *Manzo-Jurado*, the *Rojas-Rosas* matter,[6] and an unspecified incident when O'Neill "interrogated another individual about her Mexican heritage" are not relevant to show Plaintiffs are likely to experience a substantial, immediate, and irreparable future injury.

The sole remaining allegation described by Plaintiffs is a February 2018 event in which they claim a CBP agent in plain clothes took pictures of Suda and Hernandez dancing at a bar. (Compl., Doc. 1 ¶ 76.) According to their complaint, the agent then sent the photos to another agent, texting that "[t]here are two Mexicans at the bar." *Id.* ¶ 77. The complaint continues, "On information and belief, the agent would have detained Ms. Suda and Ms. Hernandez or arranged for other agents to do so, but one of the agents receiving the text message indicated Ms. Suda and Ms. Hernandez were friends with his wife." *Id.* ¶ 78.

The allegations fail to show Plaintiffs are likely to experience a future unlawful detention by CBP.[7] That an unnamed CBP agent neither spoke to, nor

---

[6] *Rojas-Rosas* has since been dismissed with prejudice upon a stipulation of the parties. Mar. 18, 2019, Order, CV 18-62-BMM (D. Mont.), Doc. 23.

[7] Plaintiffs' request for injunctive relief is also defective for its failure to limit the requested relief to the parties in this case. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) ("The district court must . . . tailor the injunction to affect only those persons over which it has power.").

stopped them, undermines any plausible allegation that they suffered a cognizable injury much less show Plaintiffs are likely to suffer an immediate and irreparable future injury. *Ashcroft v. Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). And their assessment of what would have occurred "[o]n information and belief" does not constitute facts showing a plausible entitlement to relief. *See, e.g.*, *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926 (9th Cir. 2013) (holding that a conclusory allegation regarding a defendant's actions based "on information and belief" was insufficient to state a claim when it was unsupported by factual assertions).

Further, the Ninth Circuit has stated—in the specific context of CBP enforcement in Havre—that an individual's "apparent Hispanic ethnicity" is a relevant matter of observation, though it alone cannot justify a stop. *See Manzo-Jurado*, 457 F.3d at 935 ("An individual's apparent Hispanic ethnicity, although a relevant factor in the reasonable suspicion inquiry, cannot by itself justify an investigatory stop in a border area."). Plaintiffs' allegations, even accepted as true,

comport with *Manzo-Jurado*, as they describe an unnamed agent declining any enforcement action whatsoever.

In sum, Plaintiffs have failed to allege facts plausibly showing they are entitled to obtain prospective equitable relief against CBP. Plaintiffs' single encounter with Border Patrol agents in May 2018 is insufficient to show a "real or immediate threat that the plaintiff[s] will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'"[8] *See Hodgers-Durgin*, 199 F.3d at 1042. Their request for prospective injunctive relief should therefore be dismissed.

///

///

///

---

[8] General allegations of injury may in some cases suffice to demonstrate standing at the pleading stage. *See Lujan v. Defender of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, however, a plaintiff pleads facts demonstrating she is not entitled to relief, "[a] plaintiff may plead herself out of court." *See Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (*quoting Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir.1995)).

### III. Plaintiffs lack of standing to demand prospective injunctive relief renders their claim for declaratory relief unripe.

"In suits seeking both declaratory and injunctive relief against a defendant's continuing practices, the ripeness requirement serves the same function in limiting declaratory relief as the imminent-harm requirement serves in limiting injunctive relief." *Hodgers-Durgin*, 199 F.3d at 1044. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

Plaintiffs' request for declaratory relief substantially mirrors their request for injunctive relief by requesting this Court to "[d]eclare that race, accent, and language cannot create suspicion sufficient to justify seizure and/or detention, except where the seizure is based on a specific and reliable suspect description matching such characteristics." (Compl., Doc. 1 at 16.) Because Plaintiffs' request for declaratory relief rests upon the same contingency that defeats their standing—that they will be unconstitutionally detained by CBP at a future date—their request for declaratory relief is unripe. The Plaintiffs' claim for declaratory relief should therefore be dismissed.

///

## CONCLUSION

Plaintiffs' claims for damages against CBP and its employees acting in their official capacities must be dismissed with prejudice because the United States has not waived its sovereign immunity for damages claims under the U.S. Constitution. Plaintiffs' request for injunctive relief must be dismissed because they have failed to plausibly allege they are likely to suffer substantial, immediate, and irreparable harm. Plaintiffs' request for declaratory relief should be dismissed as unripe. Because Plaintiffs fail to state any claim for relief against CBP and its employees acting in their official capacities, the complaint as to those parties must be dismissed.

DATED this 19th day of April, 2019.

        KURT G. ALME
        United States Attorney


        */s/ Chad C. Spraker*
        Assistant U.S. Attorney
        Attorney for Defendants

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 3,720 words, excluding the caption and certificates of service and compliance.

DATED this 19th day of April, 2019.

                                      KURT G. ALME
                                      United States Attorney

                                      */s/ Chad C. Spraker*
                                      Assistant U.S. Attorney
                                      Attorney for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2019, a copy of the foregoing document was served on the following person by the following means.

| | |
|---|---|
| __1-5__ | CM/ECF |
| _____ | Hand Delivery |
| _____ | U.S. Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. Clerk of Court

2. Alex Rate
Elizabeth Ehret
American Civil Liberties Union of Montana Foundation, Inc.
P.O. Box 9138
Missoula, MT 59807
(406) 203-3375 – phone
ratea@aclumontana.org
ehrete@aclumontana.org
Attorneys for Plaintiffs

3. Danielle Coffman
Crowley Fleck, PLLP
1667 Whitefish State
Kalispell, MT 59901
(406) 752-6644 – phone
dcoffman@crowleyfleck.com

4. Cody Wofsy
American Civil Liberties Union Foundation, Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415)343-0770 – phone
cwofsy@aclu.org

5. Omar C. Jadwat
American Civil Liberties Union Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660 – phone
ojadwat@aclu.org

> /s/ *Chad C. Spraker*
> Assistant U.S. Attorney