Cody Wofsy*
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
(415) 343-0785
cwofsy@aclu.org

Omar Jadwat*
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2660
ojadwat@aclu.org

Alex Rate
Elizabeth K. Ehret
American Civil Liberties Union of Montana Foundation, Inc.
P.O. Box 1968
Missoula, MT 59806
Telephone: (406) 204-0287
ratea@aclumontana.org

Danielle Coffman
Crowley Fleck, PLLP
1667 Whitefish Stage
Kalispell, MT 59901
Telephone: (406)752-6644
dcoffman@crowleyfleck.com

*Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| ANA SUDA and MARTHA HERNANDEZ, <br><br> *Plaintiffs*, <br> v. <br><br> UNITED STATES CUSTOMS AND BORDER PROECTIO; CBP COMMISSIONER KEVIN K. MCALEENAN, in his official capacity; and CBP AGENT PAUL O'NEILL, in his official individual capacity; and JOHN DOES 1-25, in their individual and official capacities, <br><br> *Defendants*. | Civil Action No. CV-19-10-GF-BMM <br><br><br> **OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS** |

# INTRODUCTION

Plaintiffs Ana Suda and Martha Hernandez are United States citizens, and bilingual members of Havre, Montana's Latinx community.[1]  Havre is a small town with a sizeable United States Customs and Border Protection ("CBP") presence.  Like the rest of the country, Havre is also increasingly diverse in terms of race, ethnicity, and language.  The United States has no official language and millions of Americans speak languages other than English—often as their first or only language.  For many Americans, like Plaintiffs, speaking another language is an important way to remain connected to community, culture, and family.  As Judge Watters recently observed: "In a country as diverse as the United States, it is common to encounter someone" who speaks a language other than English. *Hernandez v. Skinner*, ___ F. Supp. 3d ___, 2019 WL 2290498, at *4 (D. Mont. May 29, 2019).

On May 16, 2018, a CBP agent singled out and detained Plaintiffs, citing their decision to speak Spanish in public.  Because that seizure was unsupported by reasonable suspicion or probable cause, and because Plaintiffs were singled out because of their race, the seizure violated Plaintiffs' constitutional rights.

---

[1] "Latinx" is a gender-neutral term sometimes used in lieu of Latino or Latina.

In its motion to dismiss on behalf of CBP and the official-capacity defendants, the government does not disagree. Instead, it argues that the case should be dismissed because Plaintiffs are unlikely to be harmed in a similar way in the future, so they lack standing to seek prospective relief. That is wrong. As numerous courts in this Circuit have recognized, arguments like the government's are generally misplaced and premature at this early stage in the litigation. At this stage, Plaintiffs' allegations supporting the likelihood of future harm must be credited, and all inferences drawn in their favor. Indeed, in the course of discovery Plaintiffs will pursue important evidence further demonstrating the potential future harm, but that is currently in the government's sole possession. And the allegations in the Complaint amply support the serious threat of future harm. Plaintiffs have been singled out by CBP twice already within a three-month period; they have alleged a consistent pattern of similar such conduct by CBP in the area; they need break no laws to be subject to another seizure; and Havre is a small town where Latinx individuals like Plaintiffs are conspicuous. Accordingly, the government's motion should be denied.

## BACKGROUND

The following facts are alleged in the Complaint and must be taken as true at this stage. Plaintiffs Ana Suda and Martha Hernandez are U.S. citizens who live in Havre, Montana. Complaint ¶¶ 16-17. They were both born in the United States

3
Opposition to the United States' Motion to Dismiss

and grew up speaking Spanish. *Id.* ¶¶ 24-25. Like many Latinx-Americans, speaking Spanish connects them with their identity and their community. *Id.* ¶¶ 26-28.

Plaintiffs were illegally seized on May 16, 2018. While shopping at a convenience store, they chatted together in Spanish. *Id.* ¶¶ 34-36. A CBP agent, defendant Paul O'Neill, overheard Plaintiffs speaking Spanish, interrogated them about their citizenship status, and demanded their identification. *Id.* ¶¶ 37-48.[2] Agent O'Neill said, in a video recorded exchange, that he demanded their identification because he heard them speaking Spanish. *Id.* ¶¶ 49-52. Agent O'Neill's supervisor later arrived. When Ms. Suda asked whether they would have been seized if they were speaking French, the supervisor said "no, we don't do that." *Id.* ¶¶ 60-61. Plaintiffs were detained for 40 minutes before they were released. *Id.* ¶ 62.

This incident was part of "a longstanding pattern of abusive seizures and investigations by local CBP agents." *Id.* ¶ 71. "In a series of events," agents of the local administrative CBP unit—known as the "Havre Sector"—"have targeted Latinx individuals without justification, often based on their race." *Id.* ¶ 73. One

---

[2] As the government notes, Agent O'Neill's name is misspelled in the Complaint. There is no dispute that Agent O'Neill was the individual who detained Plaintiffs on May 16. The Court granted a motion to amend the caption to reflect the correct spelling. Doc. No. 34.

4

such incident led to a published Ninth Circuit opinion holding that CBP agents illegally detained a group of men in Havre. *Id.* ¶ 74; *United States v. Manzo-Jurado*, 457 F.3d 928 (9th Cir. 2006). In another incident, Agent O'Neill interrogated an individual about her Mexican heritage at a social gathering. Complaint ¶ 80.

Perhaps most tellingly, Plaintiffs were themselves singled out just three months before Agent O'Neill seized them. *Id.* ¶ 76. A Havre Sector agent noticed them at a bar and texted photos of them to other agents with the message: "There are two Mexicans at the bar." *Id.* ¶ 77. Although he knew nothing about them apart from their race, the agent would have seized them but for a fortuitous circumstance: Plaintiffs were friends with the wife of one of the agents who received the text, and her husband intervened. *Id.* ¶ 78.

## LEGAL STANDARD

On a motion to dismiss, whether "under Rule 12(b)(6) or as a facial attack on subject matter jurisdiction under Rule 12(b)(1), all factual allegations in [the plaintiff's] complaint are taken as true and all reasonable inferences are drawn in his favor." *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013); *see also id.* at 1133 n.6 (distinguishing between facial and factual challenges under Rule 12(b)(1)). "[I]n order to survive a motion to dismiss, the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face,'" meaning that the Court "can draw a 'reasonable inference' from the facts alleged that the defendant is liable for the misconduct alleged." *High Country Paving, Inc. v. United Fire & Cas. Co.*, 365 F. Supp. 3d 1093, 1094-95 (D. Mont. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

As an initial matter, the government's argument regarding damages against the United States, its agencies, or the official capacity defendants, is misplaced. Doc. No. 18 ("Br.") at 7-8. Plaintiffs have sought damages only against the individual capacity defendants, namely Defendant O'Neill and the Doe Defendants. To the extent Plaintiffs' Complaint might be read to assert such damages against the United States, CBP, or defendants in their official capacities, Plaintiffs have no objection to dismissal of only those damages claims.[3]

The only dispute raised by the government's motion, then, is its argument that Plaintiffs are not entitled to prospective relief. It argues that under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc), Plaintiffs' claims for injunctive and declaratory relief should be dismissed. To prevail on a claim for an injunction, a plaintiff must

---

[3] Plaintiffs note that they have submitted a notice of claim under the Federal Tort Claims Act, and may amend their Complaint to add a claim under the Act should the government deny the claim or fail to act on it within six months of its submission, which will be August 21, 2019. *See* 28 U.S.C. § 2675(a).

demonstrate that she is "realistically threatened" with future harm. *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1256 n.9 (9th Cir. 2008) (quoting *Armstrong v. Davis,* 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). But the government's argument for dismissal is wrong and misapprehends the proper standard at this stage of the case.[4]

On a motion to dismiss, the Court is "required . . . to presume the truth of [Plaintiffs'] allegations and to construe all of the allegations in [their] favor." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir.), *cert. denied,* 139 S. Ct. 640 (2018). This standard is critically different from that imposed at later stages of a case. Where a plaintiff's "claim is plausible—meaning something more than 'a sheer possibility,' but less than a probability—the plaintiff's failure to prove the case on the pleadings does not warrant dismissal." *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). That is particularly true where a plaintiff lacks access to important evidence. *See, e.g., id.*

---

[4] The government's motion mixes the concepts of Article III standing and entitlement to an injunction under principles of equity. *See Hodgers-Durgin*, 199 F.3d at 1041-42 (distinguishing the two concepts, assuming without deciding that the plaintiffs had Article III standing, and holding they had failed to demonstrate irreparable injury). It relies almost exclusively on *Hodgers-Durgin*, the holding of which addressed equitable principles, but also suggests its motion is addressed to lack of "standing." Br. 8. Because at this stage Plaintiffs have alleged ample facts to satisfy both requirements, the difference is beside the point.

7
Opposition to the United States' Motion to Dismiss

at 1076 ("plaintiffs have no way of knowing, without discovery, who at [the defendant University] devised the unwritten policy").

The procedural posture of this case is dispositive of Defendants' motion. *Hodgers-Durgin*, on which they almost exclusively rely, was decided at summary judgment, after the plaintiffs had the opportunity to gather evidence through discovery. Likewise, *Lyons* was an appeal from a preliminary injunction, and the Court examined a developed record that included "affidavits, depositions, and government records." 461 U.S. at 99. Those cases concluded that the plaintiffs had failed to *demonstrate* a likelihood of future harm. But a plaintiff "is not required to demonstrate anything in order to survive a Rule 12(b)(6) motion to dismiss." *OSU Student All.*, 699 F.3d at 1078 (internal quotation marks omitted). "Rather, [she] only needs to allege sufficient factual matter, accepted as true, to state a [plausible] claim to relief . . . ." *Id*.

That standard is particularly important in assessing whether Plaintiffs are "realistically threatened" with future harm—for purposes of both standing for prospective relief and the equitable standard for an injunction. *Ibrahim*, 538 F.3d at 1256 n.9. That inquiry is "highly fact-dependent." *Id*. It calls for an assessment, in the totality of the circumstances, of how likely future harm is—which may turn on any number of circumstances. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) (distinguishing

*Lyons*). Indeed, for that reason, the Ninth Circuit has emphasized the importance of "district court *findings* on the likelihood of recurrent injury." *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985), *as amended,* 796 F.2d 309 (9th Cir. 1986) (distinguishing *Lyons* based on findings) (emphasis added). At the motion to dismiss stage, of course, there are no facts yet to find, which is why allegations must be credited and inferences drawn in Plaintiffs' favor.

Accordingly, courts routinely deny motion to dismiss arguments like the one the government advances here. "District courts within this circuit have recognized that Defendants' arguments [based on *Hodgers-Durgin* and *Lyons*] are more properly raised when courts have the benefit of an evidentiary record (such as on summary judgment or upon an application for a preliminary injunction), rather than at this early stage in the proceedings." *Melendres v. Maricopa Cnty.*, No. CV-07-2513-PHX-GMS, 2009 WL 2707241, at *4 (D. Ariz. Aug. 24, 2009); *see also, e.g.*, *Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 933-34 (E.D. Cal. 2015) ("It is premature at the pleading stage to eliminate a potential remedy should plaintiffs prevail in this litigation."); *Howard v. City of Vallejo,* No. 13-1439, 2013 WL 6070494, at *7 (E.D.Cal. Nov. 13, 2013) ("plaintiffs' claim for injunctive relief must be resolved on an evidentiary record and not at the pleading stage"); *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1195 (N.D. Cal. 2009) ("*Lyons* was based on a full evidentiary record, not the

9
Opposition to the United States' Motion to Dismiss

untested allegations of the complaint."); *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131, 1142 (N.D. Cal. 2000) ("Plaintiffs are entitled to discovery to attempt to establish an evidentiary basis for their claims for injunctive relief. After discovery, Defendants may attack Plaintiffs' entitlement to injunctive relief by a motion for summary judgment.") (citation omitted); *Bassette v. City of Oakland*, No. C-00-1645 JCS, 2000 WL 33376593, at *6 (N.D. Cal. Aug. 11, 2000) ("dismissal of Plaintiff's claim for equitable relief is premature at this stage"). The government's motion should likewise be denied.

Plaintiffs' allegations, taken as true and in the light most favorable to them, establish that they are "realistically threatened" with future harm. *Ibrahim*, 538 F.3d at 1256 n.9. At least four sets of circumstances lead to that conclusion: Plaintiffs' own past experiences; the similar experiences of others; the lack of any unlawful conduct triggering Defendants' actions; and the size and demographics of Havre, Montana.

1. <u>Plaintiffs' past experiences.</u> The government does not deny that, taking the allegations in the Complaint as true, Plaintiffs have already been subjected to an unconstitutional seizure. Nor could it. The Complaint is clear that Agent O'Neill detained Plaintiffs without reasonable suspicion or probable cause, and with discriminatory purpose, in violation of the Fourth and Fifth Amendments. "Past wrongs, though insufficient by themselves to grant standing, are 'evidence

10

bearing on whether there is a real and immediate threat of repeated injury.'" *Davidson*, 889 F.3d at 967 (quoting *Lyons*, 461 U.S. at 102). Thus, Plaintiffs' past detention supports the inference that they will be again illegally seized.

Nor was that seizure an isolated incident. Just three months before Agent O'Neill detained them, a CBP agent singled Plaintiffs out for immigration enforcement based solely on their race. Complaint ¶¶ 76-79. Plaintiffs have thus specifically alleged two similar incidents within a short period of time, further supporting the likelihood of future injury. *See Askins v. U.S. Dep't of Homeland Sec.*, No. 12-CV-2600 W (BLM), 2013 WL 5462296, *1, *7 (S.D. Cal. Sept. 30, 2013), *on reconsideration in part,* No. 12-CV-2600 W (BLM), 2015 WL 12434362, *7 (S.D. Cal. Jan. 29, 2015) (holding plaintiff who alleged "two separate but similar incidents" had standing).[5] By contrast, in *Hodgers-Durgin* the evidence demonstrated that the Plaintiffs saw Border Patrol agents daily but had been detained only once in a ten-year period. 199 F.3d at 1044.

The government seeks to downplay the incident in the bar, asserting that the fact that the CBP officer did not actually interrogate or seize Plaintiffs means they cannot rely on this incident. But Plaintiffs have alleged that they *would* have been

---

[5] The Ninth Circuit has warned that, "[i]n determining whether an injury is similar, we 'must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry.'" *Davidson*, 889 F.3d at 967 (quoting *Armstrong*, 275 F.3d at 867).

11

Opposition to the United States' Motion to Dismiss

detained except for the lucky circumstance of a personal relationship with the wife of another agent. Complaint ¶ 78. Indeed, it is a commonsense inference—and therefore one that this Court must draw—that the CBP agent's text message indicates that he would have engaged in immigration enforcement against Plaintiffs absent the happenstance of Plaintiffs' friend learning of the agent's text message. The government complains that Plaintiffs do not know for sure what the agent would have done. Br. 15 (pointing out that this allegation was made "on information and belief").[6] But investigating and testing such questions is what discovery is for. At this stage, the inference Plaintiffs allege is warranted and their allegations must be credited.

The government also appears to argue that the bar incident was not itself a legal violation because the agent did not end up taking enforcement action. Br. 15-16. That misses the point. The agent was ready to do so, but for the intervention of Plaintiffs' friend, which is evidence that Plaintiffs are likely to be subjected to similar encounters in the future.

---

[6] The "plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 642 (2018) (alteration in original, internal quotation marks omitted).

2. Similar experiences of other individuals. Plaintiffs have alleged that their experiences are part of a larger "longstanding pattern of abusive seizures and investigations by local CBP agents." Complaint ¶ 71. Specifically, "[i]n a series of events, Havre Sector agents have targeted Latinx individuals without justification, often based on their race." *Id.* ¶ 73. One such incident led to a published Ninth Circuit opinion holding that CBP agents had illegally seized a group of men in Havre. *Id.* ¶ 74; *United States v. Manzo-Jurado*, 457 F.3d 928 (9th Cir. 2006). That incident was strikingly similar, involving the same federal agency, in the same small town, and rejected the observation of individuals speaking Spanish as sufficient to justify a seizure. *See* 457 F.3d at 937. It is unusual for any such incident to result in a published appellate decision; a reasonable inference from the existence of this case is that other similar incidents have occurred but have gone unreported. This pattern of misconduct makes it more likely that Plaintiffs *themselves* will again be illegally singled out and seized.

The government's response to Plaintiffs' assertions of CBP misconduct is a non-starter. It asserts that allegations about harms inflicted on other people have no bearing on Plaintiffs' claim for injunctive relief. Br. 13. That view is illogical and wrong. As noted above, the question here is one of probability—how likely or unlikely is it that a plaintiff will be injured in the future? Plaintiffs may of course point to widespread misconduct as evidence increasing the probability that they

13

themselves will be harmed. *See, e.g.*, *Armstrong,* 275 F.3d at 861 (plaintiffs can establish "that [an] injury is likely to recur" by showing "that the harm is part of a pattern of officially sanctioned behavior") (internal quotation marks omitted); *LaDuke*, 762 F.2d at 1324 (emphasizing the district court's finding that "defendants engaged in a standard pattern" of misconduct); *Melendres*, 2009 WL 2707241, at *4 (collecting cases). *Hodgers–Durgin* did not hold otherwise; rather, it merely held that the named plaintiffs, as to whom future harm was unlikely, could not obtain an injunction based on the likelihood that *other* class members would be harmed in the future. 199 F.3d at 1045; *see also Melendres*, 2009 WL 2707241, at *4 (distinguishing *Hodgers–Durgin*).

Notably, the alleged pattern of misconduct is an aspect of cases like this one in which discovery is particularly important. Apart from incidents available in the public record, any individual plaintiff is unlikely to learn about other similar seizures; the relevant records are likely to be in the sole possession of the government. Under such circumstances, the rule requiring this Court to credit Plaintiffs' allegations and permit them to be tested in discovery is critical.[7]

---

[7] Even beyond the consistent pattern of misconduct, the allegations in the Complaint support an inference that the Havre sector has an *official policy* of endorsing or encouraging such unlawful seizures. As noted, Plaintiffs have alleged a consistent pattern of unlawful seizures. That consistency is evidence that leadership in the Havre sector have directed or approved of such seizures. And that inference is reinforced by Plaintiffs' allegation that Agent O'Neill's supervisor, when asked whether Plaintiffs would have been detained if they were

3.  Lack of triggering illegal conduct.  Another aspect of Plaintiffs' allegations increasing the likelihood of future harm is the fact that no illegal conduct by Plaintiffs is needed to trigger CBP's unlawful actions.  Courts sometimes conclude that "standing is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff," *Armstrong*, 275 F.3d at 865, because they "assume that [individuals] will conduct their activities within the law," *Hodgers-Durgin*, 199 F.3d at 1041.  In *Lyons*, for example, the Supreme Court rejected standing in part because it was speculative that the plaintiff would be subjected to another traffic stop and arrested for resisting arrest, setting him up to again be choked by police.  461 U.S. at 108.

By contrast, Plaintiffs were doing absolutely nothing unlawful when they were detained or when the CBP agent targeted them in the bar.  That circumstance weighs in favor of their likelihood of future harm, as a future seizure could occur without any predicate illegal action on their part.  *See Armstrong*, 275 F.3d at 866

---

speaking French instead of Spanish, responded "no, we don't do that."  Complaint ¶ 61.  The negative implication of that statement is that the Havre sector—"we"—*does* do what Agent O'Neill in fact did, namely detain people based on speaking Spanish.  Such a policy would make Plaintiffs suffering future seizures even more likely.  *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001) (formal policy makes future harm more likely); *Melendres*, 2009 WL 2707241, at *4 (same, collecting cases).  Because the existence of such a policy is a reasonable inference from the alleged facts, Plaintiffs are entitled to it and to test in discovery whether such a policy exists.

(relying on the fact that "plaintiffs need not engage in unlawful conduct to become subject to the unlawful practices they seek to enjoin"); *LaDuke*, 762 F.2d at 1326 ("Unlike *Lyons*, [plaintiffs] do not have to induce a police encounter before the possibility of injury can occur."); *see also Hodgers–Durgin,* 199 F.3d at 1041 (distinguishing *Lyons* on this basis but declining to resolve Article III standing).

4. <u>Size and demographics of Havre.</u> The specific circumstances of Havre likewise make future harm more likely. Havre is a small town, with a population of less than 10,000. Complaint ¶ 41. While Havre's demographics are increasingly diverse, and while it is not unusual for CBP agents to encounter U.S. citizens speaking Spanish throughout Montana, Latinx individuals remain a distinct minority. *See id*. at ¶ 6 (Montana statistics). And CBP has a significant presence in Havre, as illustrated by the regional office located in Havre and the various encounters with CBP noted in the Complaint. *Id*. at ¶ 72-80. These circumstances mean that Plaintiffs, as Latinx residents of a small town, are likely to be targeted by Havre sector CBP agents again.

Again, the contrast with *Lyons* is instructive. There, the Court acknowledged that "it may be that among the countless encounters between the police and the citizens of a great city such as Los Angeles, there will be certain instances in which strangleholds will be illegally applied." *Lyons*, 461 U.S. at 108. But the Court rejected as speculative the inference that, among all those encounters

Opposition to the United States' Motion to Dismiss

in that "great city," Lyons himself would be again subjected to a stranglehold. *Id.* Here, Plaintiffs challenge misconduct in a small town with a large number of CBP agents, and where Plaintiffs are conspicuous by nature of their race. To their credit, and despite the actions of CBP, Plaintiffs are not going to altogether stop speaking Spanish in public places. Those circumstances make future harm more likely. *Cf. Armstrong*, 275 F.3d at 867 ("Our conclusion is bolstered by the fact that a person with disabilities is more likely to be suspected of conduct that results in the revocation of parole than other parolees.").

In sum, the various circumstances alleged in the Complaint establish a very realistic threat that Plaintiffs will again be illegally seized by Havre Sector CBP agents. At this early stage of the litigation, that is more than enough to reject the government's arguments and deny its motion to dismiss.[8]

## CONCLUSION

The government's motion to dismiss should be denied.

---

[8] As the government concedes, its arguments as to declaratory relief mirror its arguments as to injunctive relief, Br. 17—and they fail for the same reasons. And the government's argument about the appropriate scope of a possible future injunction, Br. 14, is plainly premature at this stage.

17

Dated: June 14, 2019

Respectfully submitted,

*/s/Cody Wofsy*
Cody Wofsy*
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
(415) 343-0785
cwofsy@aclu.org

Omar Jadwat*
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2660
ojadwat@aclu.org

*/s/ Alex Rate*
Alex Rate
Elizabeth K. Ehret
American Civil Liberties Union of Montana Foundation, Inc.
P.O. Box 1968
Missoula, MT 59806
(406) 204-0287
ratea@aclumontana.org

Danielle Coffman
Crowley Fleck, PLLP
1667 Whitefish Stage
Kalispell, MT 59901
(406)752-6644
dcoffman@crowleyfleck.com

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via ECF on June 14, 2019, and directed to the following:

VICTORIA L. FRANCIS
Assistant U.S. Attorney
2601 2nd Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 247-6101
FAX: (406) 657-6058
Email: victoria.francis@usdoj.gov

CHAD C. SPRAKER
Assistant U.S. Attorney
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5120
FAX: (406) 457-5130
Email: chad.spraker@usdoj.gov

CORY R. LAIRD
LANCE P. JASPER
Reep Bell Laird & Jasper
2955 Stockyard Road
Missoula, MT 59808
406-541-4100
Fax: 541-4101
Email: laird@westernmontanalaw.com, jasper@westernmontanalaw.com

DATED this 14th day of June, 2019.

*/s/ Cody Wofsy*
Cody Wofsy*
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
(415) 343-0785
cwofsy@aclu.org

19
Opposition to the United States' Motion to Dismiss

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 3,970 words, excluding the caption and certificates of service and compliance.

DATED this 14th day of June, 2019.

*/s/ Cody Wofsy*
Cody Wofsy*
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
(415) 343-0785
cwofsy@aclu.org